# EXHIBIT A

2021 WL 3403632
Only the Westlaw citation is currently available.
United States District Court, W.D. Wisconsin.

Carson LAKO, Plaintiff,
v.
PORTFOLIO RECOVERY ASSOCIATES and Raush, Sturm Israel Enerson & Hornik LLP, Defendants.

20-cv-355-wmc
|
Signed 08/04/2021

**Attorneys and Law Firms**

[Briane F. Pagel, Jr.](), Lawton & Cates, S.C., Madison, WI, for Plaintiff.

[Manuel H. Newburger](), Barron & Newburger, P.C., Austin, TX, for Defendants.

OPINION AND ORDER

[WILLIAM M. CONLEY](), District Judge

*1 Plaintiff Carson Lako brings this suit against defendants Portfolio Recovery Associates ("Portfolio") and the law firm of Rausch Sturm Israel Enerson & Hornik, LLP ("Raush"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), [15 U.S.C. § 1692, et seq.]() and the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 421, *et seq*. Pending before the court is defendants' motion for partial summary judgment (dkt. #12) which the court will grant for reasons explained below.

UNDISPUTED FACTS [1]

[1] These facts are derived from the undisputed submissions of the parties, and where disputed from the underlying evidence. The court views all evidence and draws all inferences in the light most favorable to plaintiff as the non-moving party. [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)]().

On May 9, 2017, Synchrony Bank, a federally chartered savings association, received an online application for a PayPal account in the name of Carson Lako. The application was approved that same day, and an account was opened in Lako's name. The debt in this account functioned something like a credit card in that a consumer incurs charges, then later pays down those charges or at least some minimum payment in order to continue using the account for new charges. Similarly, if Lako did not make timely payments, under the terms of the account, the creditor was allowed to impose late fees and to include those late fees in any minimum payment due.

Between May and June of 2017, Lako incurred over $2,600 in charges on his account, but failed to make any payment. Because of his failure to pay the June 2017 balance, he was charged a $16.64 late fee. On July 28, 2017, Synchrony also mailed a "right to cure" letter to Lako, advising that a minimum payment of $81 was due and had to be paid by August 12, 2017. Although the letter did not state that any portion of this $81 was a late fee, separate billing statements from July 2017 suggest that this minimum payment included the $16.64 late fee for June 2017.[2] Lako continued to fail to make any minimum payments, and he was charged an additional $38 late fee each month between July and October of 2017, for a total of $168.64 in late fees. Indeed, *no* payments were ever made on Lako's account with Synchrony, and so, the account quickly became delinquent.

[2] In his brief, plaintiff lays out the math behind these minimum payments and persuasively demonstrates that they *do* include late fees. (*See* Pl.'s Opp'n (dkt. #20) 2 n.2.) Because defendants do not appear to dispute that these minimum payments include late fees, however, the court need not recount plaintiff's calculations here.

On December 22, 2017, Synchrony "charged off" the account, and on October 21, 2018, it sold the account outright to Portfolio. Some eight months after that sale, the Rausch law firm, on behalf its client, Portfolio, sent Lako two letters dated June 26, 2019. The first was an initial notice letter setting forth his right to dispute the account debt; the second was titled "notice of right to cure default" and stated that while Lako owed $3,133.59, he could pay $783 to "cure the default" on his account. Again, this letter did not state that any portion of this $783 was for a late fee. Lako neither responded to these letters, nor did he pay any part of the debt owed.

*2 On August 21, 2019, again on behalf of Portfolio, Rausch next filed a small claims action against Lako in

Wisconsin state court. On September 17, 2019, Lako executed a fee agreement with counsel Lawton & Cates, S.C., in which he employed counsel to represent him on a contingent fee basis while also agreeing to pay all costs and out-of-pocket expenses relating to the representation. (Dkt. #34-1.) Subsequently, Lako's retained counsel defended the state court suit against him, contending in part that the notice of default served on him did not itemize delinquency charges as required by Wisconsin law and, therefore, that the suit should be dismissed. On March 4, 2020, in apparent agreement, the state court dismissed the lawsuit with prejudice without issuing a written finding of facts or opinion.

Plaintiff's counsel filed this suit in federal court on Lako's behalf, alleging three causes of action. First, Lako alleges that Rausch violated § 1692e of the FDCPA by falsely representing that an attorney was meaningfully involved in the debt collection process. Second, he alleges that both defendants falsely represented the status of his debt in violation of § 1692e by purporting to have properly accelerated his debt and filed suit against him despite Lako never being provided an adequate right to cure letter pursuant to Wisconsin law. Third, he alleges that both defendants violated § 427.104(1)(k) of the WCA by misrepresenting the level of attorney involvement.

On January 8, 2021, the parties submitted a stipulation proposing the order for litigation of issues. Pursuant to this stipulation, the court agreed that discovery and summary judgment as to plaintiff's second cause of action could proceed first, with discovery and litigation as to the other two issues stayed. In accordance with this plan, defendants have now submitted a partial motion for summary judgment as to plaintiff's second cause of action. Additionally, after oral argument held on April 7, 2021, the court requested supplemental briefing on the issue of standing, as well as a specific issue regarding the operation of the WCA's notice of right-to-cure requirement.

OPINION

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the court's subject matter jurisdiction turns on plaintiff's standing to sue, the court must first address that issue, then consider the merits of defendants' partial summary judgment motion under this standard.

I. Standing

The "irreducible constitutional minimum of standing" requires a plaintiff invoking federal jurisdiction to establish that he has suffered an injury in fact fairly traceable to the defendant's challenged conduct and redressable by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Further, these requirements must be proved in "the manner" and with the "degree of evidence required at the successive stages of the litigation." Id. at 561.

Recently, the Seventh Circuit has issued a number of cases regarding standing in the FDCPA context, each time emphasizing that a plaintiff must do more than simply claim the act was violated to establish injury in fact. See Nettles v. Midland Funding LLC, 983 F.3d 896, 899 (7th Cir. 2020) ("Article III standing requires a concrete injury even in the context of a statutory violation."); Spuhler v. State Collection Serv., Inc., 983 F.3d 282, 286 (7th Cir. 2020) ("The failure to provide information that is required under the FDCPA inflicts a concrete injury only if it impairs a plaintiff's ability to use the withheld information for a substantive purpose that the statute envisioned.") (internal quotations omitted); Bazile v. Fin. Sys. of Green Bay, Inc., 983 F.3d 274, 280 (7th Cir. 2020) ("[A] bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III.") (internal quotations omitted); Gunn v. Thrasher, Buschmann & Voelkel, P.C., 982 F.3d 1069, 1072 (7th Cir. 2020) ("[T]he asserted violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing. There must still be a concrete injury."); Brunett v. Convergent Outsourcing, Inc., 982 F.3d 1067, 1068 (7th Cir. 2020), reh'g denied (Jan. 11, 2021) ("[A] plaintiff who lacks a concrete injury cannot sue under the Fair Debt Collection Practices Act or a similar statute just because a statement in a letter is incorrect or misleading."); Larkin v. Fin. Sys. of Green Bay, Inc., 982 F.3d 1060, 1066 (7th Cir. 2020) ("[I]t's not enough for an FDCPA plaintiff to simply allege a statutory violation; he must allege (and later establish) that the statutory violation harmed him or presented an appreciable risk of harm.") (internal quotations omitted).

*3 Here, the primary injury alleged by plaintiff relates to defendants' state court collection suit, which he claims was

wrongly filed against him in violation of Wisconsin law. At the summary judgment stage, plaintiff has produced the following evidence to support his allegations of injury: (1) documents showing the fact of the state lawsuit; (2) the contingent fee agreement between himself and Lawton & Cates, in which counsel agreed both to defend him in the state collection suit and pursue his FDCPA and WCA remedies, while Lako agreed to pay for all costs and out-of-pocket expenses relating to the representation; and (3) a declaration from plaintiff's counsel that Lako incurred $25.55 in costs and fees in the state court suit.

As an initial matter, a plaintiff may not achieve standing in a lawsuit by pointing to the costs of prosecuting the same suit. *See* *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"). With respect to an FDCPA claim in particular, the Seventh Circuit has further held that a debtor's decision to hire a lawyer due to her confusion over an allegedly misleading dunning letter was *not* a concrete injury. *Brunett*, 932 F.3d at 1069.

Unlike in these cases, however, Lako did not hire a lawyer proactively then claim injury; rather, faced with a lawsuit against which he had to defend, he hired a lawyer to assist in that defense. In *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872 (7th Cir. 2020), the Seventh Circuit explained that this distinction between the cost of *bringing* suit versus the cost of *defending* a lawsuit is relevant to the injury-in-fact analysis. *Id.* at 880-82. In *Crabtree*, a plaintiff filed suit against a consumer credit agency alleging violations of the Fair Credit Reporting Act ("FCRA"), 5 U.S.C. § 1681, *et seq.* 948 F.3d at 875. The consumer credit agency then counterclaimed, alleging that the plaintiff *himself* violated the FCRA by obtaining a consumer report through his attorney for the impermissible purpose of bringing the lawsuit, and asserting as its injury the costs incurred in defending against that suit. *Id.* at 875, 880, 883.

Given those facts, the Seventh Circuit distinguished cases holding that a plaintiff may not satisfy standing by pointing to the cost of bringing suit, noting that the defendant had "alleged that the harm is the cost of *defending* the lawsuit, not bringing it." *Crabtree*, 948 F.3d at 881 (emphasis in original). Instead, the court concluded that "in defending claims, [the defendant] has suffered a redressable injury-in-fact that is traceable to [the plaintiff]." *Id.* at 883.[3] As in *Crabtree*, plaintiff's alleged injury is the cost of defending a lawsuit. Admittedly, the only actual monetary costs claimed in defending were not significant -- only $25.55 -- but standing may be conferred "when the plaintiff suffers an actual or impending injury, no matter how small." *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010).

[3]   Although the *Crabtree* court concluded that defendant *had* suffered an injury-in-fact, it ultimately affirmed the district court's dismissal of defendant's counterclaim. *Id.* at 881. In doing so, the court explained that "a party injured only by incurring defense costs -- while injured for constitutional purposes -- must find some statutory or common law hook for its motion or claim to recover those costs." *Id.* at 881. According to the court, the defendant lacked the requisite "hook" to bring a cause of action under the FCRA because its claim fell outside of the statute's "zone of interests." *Id.* at 883 ("The statutory objective [of the FCRA] was to confer protections on consumers, not to arm consumer reporting agencies with rights *against* consumers."). Here, however, no such impediment stands in the way of plaintiff. Since his "hook" is the FDCPA, and as a consumer alleging unfair debt collection practices, his cause of action falls within that statute's "zone of interests." *See* *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997) ("The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices.").

**\*4**  More concerning, as defendants point out, there is no direct evidence that Lako himself had to pay *or* will pay the $25.55. Nor does plaintiff explain why those costs were not sought after prevailing in state court.[4] Troubling though these facts are, the fee agreement indicates that Lako *is* responsible for paying costs, and his counsel avers under oath and as an officer of the court that "Lako owes us that money even if ultimately his cases are unsuccessful." (Pagel Decl. (dkt. #34) ¶ 3.) Moreover, Lako's alleged injury is further braced by the time and energy he had to spend in seeking out an attorney to defend and defending against an allegedly

wrongful stat court collection suit. See *Crabtree*, 948 F.3d at 883 (suggesting the injury in fact suffered by defendant included the "time, money, and energy" that the defendant spent in defending against the plaintiff's lawsuit); *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011) ("What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display."); *Leung v. XPO Logistics, Inc.*, 164 F. Supp. 3d 1032, 1037 (N.D. Ill. 2015) ("When a defendant's allegedly wrongful conduct costs the plaintiff time, the plaintiff has suffered an injury in fact.").

[4]  Certainly, plaintiff would appear to have been entitled to his costs as the prevailing party given that the state court judge dismissed the claim against him *with prejudice*, effectively forgiving his over $3,000 debt.

Accordingly, as in *Crabtree*, the court concludes that the costs, time, and energy incurred by plaintiff in defending against the suit brought against him amounts to a concrete injury in fact.

**II. Motion for Partial Summary Judgment**

Satisfied that plaintiff has standing to sue, the court turns to defendants' motion for partial summary judgment on his claim that defendants falsely represented that they could accelerate his debt and file suit against him in violation of § 1692e of the FDCPA.[5] This claim is premised on an underlying alleged violation of two, related provisions of the WCA. First is the WCA's "cure of default" provision, which provides in relevant part:

(1) A merchant may not accelerate the maturity of a consumer credit transaction [or] commence any action ... unless the merchant believes the customer to be in default (§ 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to § 425.104 if the customer has the right to cure under this section.

(2) ... for 15 days after such notice is given, a customer may cure a default under a consumer credit transaction by tendering the amount of all unpaid installments due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges.... The act of curing a default restores to the customer the customer's rights under the agreement as though no default had occurred.

Wis. Stat. § 425.105(1)-(2). Second is that "[n]otice of customer's right to cure default" section:

(1) A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (§ 425.105).

(2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

Wis. Stat. § 425.104.

[5]  As noted in the fact section, discovery and litigation as to plaintiff's first and third claims relating to misrepresentations of meaningful attorney involvement is currently stayed at the parties' joint request.

According to plaintiff, he never received a proper notice, including "an itemization of any delinquency charges" as required by the WCA notice and right-to-cure provisions. Thus, plaintiff argues, defendants were barred from accelerating his debt and filing suit against him. However, this violation of the WCA is *not* the basis of plaintiff's suit.[6] Instead, plaintiff's claim is brought under § 1692e of the FDCPA, which provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false representation of the "legal status of any debt." 15 U.S.C. § 1692e. Plaintiff argues that defendants misrepresented that they could properly accelerate and sue on the debt, when in fact they could not under Wisconsin law until Lako had been provided with a proper right to cure letter.

[6]  Likely because Wisconsin courts have held that the proper remedy for such a violation is dismissal of the small claims suit, which occurred here. See *Sec. Fin. v. Kirsch*, 2019 WI 42, ¶ 16, 386 Wis. 2d 388, 926 N.W.2d 167 (where debt collector improperly

filed suit before providing a proper notice of right to cure, only remedy was dismissal of the suit).

**\*5** Defendants offer a number of arguments against plaintiff's claim, but the court will begin and end with the question of whether the application of the WCA's notice and right-to-cure provisions are federally preempted by the National Bank Act ("NBA"), 12 U.S.C. § 38, et seq. The NBA was passed in 1863 and "vested in nationally chartered banks enumerated powers and 'all such incidental powers as shall be necessary to carry on the business of banking.' " Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007) (quoting 12 U.S.C. § 24 Seventh). Of course, the only national bank present in this case is Synchrony, which is not named as a party. Still, whether the NBA preempts application of the WCA to Synchrony is relevant to this case because Synchrony's rights and duties were assigned to Portfolio when the account was sold. *See* Wis. Stat. § 422.407(1) ("With respect to a consumer credit transaction ... an assignee of the rights of a creditor is subject to all claims and defenses of the customer against the assignor arising out of the transaction."); Olvera v. Blitt & Gaines, P.C., 431 F.3d 285, 288 (7th Cir. 2005) (an assignee "steps into the shoes of the assignor ... whatever the shoe size"). Thus, in order to determine whether defendants acted unlawfully, the court must first ascertain what rights and duties were owed by Synchrony. In turn, this also requires the court to consider whether a national bank, such as Synchrony, may be subject to the notice and right-to-cure requirements of Chapter 425 of the WCA or whether such requirements are preempted by federal law.

This latter question has been directly addressed by both the Wisconsin Department of Financial Institutions ("DFI") and the District Court for the Eastern District of Wisconsin, drawing opposite conclusions. The DFI concluded in a 2018 letter than the notice requirements of Wis. Stat. §§ 425.104 and 425.105 *are* federally preempted as applied to national banks. *Letter from Wis. Dep't of Fin. Inst. to Kohn Law Firm S.C., Request for finding by the Administrator pursuant to s. 425.104(4)(b) Stat.* ("DFI Letter") (Aug. 31, 2018). Further, the DFI concluded that where a national bank has accelerated the maturity of a consumer credit transaction without giving a right to cure notice, a debt collector that has subsequently been assigned that debt and then commences an action against the consumer is not in violation of Wisconsin law. *Id.* [7]

[7]  The DFI also clarified that it expects debt collectors to abide by Wis. Stat. §§ 425.104 and 425.105 for their own actions when collecting on consumer credit transactions.

In contrast, in *Boerner v. LVNV Funding LLC*, 358 F. Supp. 3d 767 (E.D. Wis. 2019), Judge Stadtmueller concluded that Wis. Stat. §§ 425.104 and 425.105 are "clearly *not* preempted." *Id.* at 776 (emphasis added). In *Boerner*, the plaintiff defaulted on a debt incurred on a Menard's/Capital One credit card; the debt was charged-off and sold to a debt collector, which then commenced a collections action without providing a right to cure letter. *Id.* at 772-73. Judge Stadtmueller rejected defendants' argument that the notice was not required because of federal preemption, reasoning that the requirement that a debt collector issue a notice of default is only "incidental" to the national bank's lending authority. *Id.* at 778.

Of course, neither the DFI letter nor the Eastern District's decision are binding on this court. *See* Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 214 (1985) (preemption is a matter of federal, not state, law); United States v. Articles of Drug Consisting of 203 Paper Bags, 818 F.2d 569, 572 (7th Cir. 1987) (district court decisions not binding on other district courts). Given the contrary conclusions of both, this court will undertake its own preemption analysis. [8] To begin, the Supreme Court set forth a general preemption standard for state regulation of national banks in *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25 (1996), holding that the NBA preempts state laws that prevent or "significantly interfere" with a national bank's exercise of its powers. *Id.* at 33. Additionally, the Office of the Comptroller of the Currency ("OCC"), the agency charged by Congress with the supervision under the NBA, has promulgated regulations further clarifying the reach of state law to national banks' operation. *See* 12 C.F.R. § 34.4 (governing the applicability of state law to national bank real estate lending); 12 C.F.R. § 7.4008 (governing the applicability of state law to national bank, non-real estate lending).

[8]  Notably, defendants did *not* argue that the DFI letter provided them with a statutory "safe harbor" under the WCA. The safe harbor provision states:
> Any act, practice or procedure which has been submitted to the administrator in writing and either approved in writing by the administrator or not disapproved by the administrator within 60 days after its submission to the administrator shall not be deemed to be a violation of chs. 421 to 427 and 429 or any other statute to which chs.

421 to 427 and 429 refer notwithstanding that the approval of the administrator or nondisapproval by the administrator may be subsequently amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

Wis. Stat. § 426.104(4)(b). Defendants' conduct would arguably appear to be approved by the DFI letter, and so fall under the safe harbor. *But see Boerner*, 358 F. Supp. 3d at 776-77 (concluding similar conduct was not protected by the DFI letter pursuant to the safe harbor provision). Regardless, because defendants did not raise this argument, it is waived. *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002).

**\*6** Of particular relevance here, 12 C.F.R. § 7.4008 discusses the preemption of state laws affecting non-real estate lending and states in part that:

A national bank may make non-real estate loans without regard to state law limitations concerning:

...

(4) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan.

12 C.F.R. § 7.4008(d). This same regulation includes a "saving clause" expressly stating that state laws on the "[r]ight to collect debts" are *not* preempted so long as they are "not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996)." 12 C.F.R. § 7.4008(e).

These preemption regulations were used by the Ninth Circuit and the Fourth Circuit to assess the validity of state notice requirements relating to debt collection in *Aguayo v. U.S. Bank*, 653 F.3d 912 (9th Cir. 2011), and *Epps v. JP Morgan Chase Bank*, N.A., 675 F.3d 315 (4th Cir. 2012), respectively. At issue in *Aguayo* was a California statute requiring a creditor to provide the borrower certain information after the repossession of the borrower's vehicle, and further providing that the creditor may not collect a deficiency judgment from the borrower if it fails to provide this information. *Aguayo*, 675 F.3d at 919. Ultimately, the Ninth Circuit concluded that the statute regulated debt collection and did no more than "incidentally affect" lending powers, and so, fell under the savings clause of 12 C.F.R. § 7.4008(e) and was not preempted. *Id.* at 925. Similarly, *Epps* involved a Maryland statute that authorizes a creditor to repossess personal property securing a loan only if the creditor complies with specific notice requirements. 675 F.3d at 323. The Fourth Circuit also concluded that the notice requirement related only to debt collection, not lending, and did not "obstruct, impair, or condition" national banks' exercise of "federally authorized powers to extend credit." *Id.* at 324.

Like both the California and Maryland statutes at issue in *Aguayo* and *Epps*, the WCA requires a creditor to provide a specific notice to a borrower before taking certain actions to collect on the debt owed. Unlike the *Aguayo* and *Epps* statutes, however, the WCA goes beyond debt collection and sets conditions on the lending relationship between the creditor and the borrower. In particular, the WCA prohibits a lender not just from pursuing debt collection, but also from accelerating the maturity of a loan, unless and until it provides notice under Wis. Stat. § 425.104. Moreover, this notice must provide a borrower with the opportunity to cure his default, and if he does so, his rights under the agreement are restored "as though no default had occurred." Wis. Stat. § 425.105. In an opinion interpreting Wis. Stat. §§ 425.105 and 425.104, the Wisconsin Supreme Court has explained that "[t]he purpose of the notice of right to cure is to give the customer an opportunity, before the merchant accelerates the obligation, to restore his or her loan to a current status and thus preserve the customer-merchant relationship." *Sec. Fin. v. Kirsch*, 2019 WI 42, ¶ 22, 386 Wis. 2d 388, 926 N.W.2d 167 (internal quotation and citation omitted).

**\*7** Thus, Wis. Stat. §§ 425.105 and 425.104 go beyond a simple notice requirement and reach into the relationship between a lender and a borrower, affecting the *terms* of credit itself. This is expressly preempted by 12 C.F.R. § 7.4008(d)(4), which provides that state laws affecting the terms of credit are preempted to the extent that they apply to national banks, including the repayment schedule, term to maturity (meaning the date on which a borrower's final loan payment is due), and the circumstances under which a loan may be called due. [9] Nor do these state law provisions fall within the savings clause of 12 C.F.R. § 7.4008. Again, the savings clause

provides in part that state laws relating to debt collection are not preempted, but only to the extent they do not prevent or significantly interfere with a national bank's exercise of its powers. 12 C.F.R. § 7.4008(e) (citing *Barnett Bank*, 517 U.S. 25). Here, although the provisions do relate in part to debt collection, they go beyond that by imposing conditions on the terms of credit within the lending relationship. By doing so, the provisions significantly interfere with a national bank's exercise of its lending powers, and so are preempted under the *Barnett Bank* standard. [10]

[9]    The court considered whether the WCA's notice provision could be read independently from the right to cure provision, but Wisconsin law suggests that the answer is no. In particular, Wisconsin courts have explained that "a customer is entitled to notice only if the customer has a right to cure the default." *Rosendale State Bank v. Schultz*, 123 Wis. 2d 195, 198, 365 N.W.2d 911 (Ct. App. 1985). This is for the obvious reason that where there is no right to cure, "[t]he purpose of the statute would not be served by requiring notice of the right to cure." *Id.* at 199. Having concluded that a national bank is not required to give a borrower the opportunity to cure his default and restore his rights under the agreement, it would follow that a national bank is therefore also not required under Wisconsin law to provide a borrower with the notice provided in Wis. Stat. § 425.104.

[10]    To give an example of this interference -- national banks are required to charge off an open-end credit loan when 180 days past due. OCC Bulletin 2000-20, Uniform Retail Credit Classification and Account Management Policy: Policy Implementation (June 20, 2000) (citing Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903 (June 12, 2000)). To "charge off" a loan means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely." "Charge Off," Black's Law Dictionary (11th ed. 2019). If applied to national banks, a circumstance could arise in which Wisconsin law would require a bank to restore a borrower's pre-default rights at the same time that federal law would require the bank to charge off the account as a loss.

This court's conclusions are supported by an OCC Notice, which considered whether similar provisions of the Georgia Fair Lending Act ("GFLA") were federally preempted as to national banks. [11] 68 Fed. Reg. 46,264. Like the WCA, the GFLA includes limits on when a loan can be accelerated. *Id.* at 46,276. The OCC concluded that this provision was preempted as applied to national banks on the grounds that "[a] limitation on the ability to accelerate the indebtedness" restricts "the ability of a lender and a borrower to agree to terms that would alter the term to maturity of a loan." *Id.* Also like the WCA, the GFLA includes a right to cure default provision that states a consumer's cure of default reinstates him to the same position as if the default had not occurred. *Id.* at 46,276-77. Again, the OCC found this provision to be preempted as applied to national banks, reasoning that it "requires the original term of the loan to be reinstated upon curing a default, notwithstanding the possibility that prudent underwriting would suggest a modification of terms (including maturity)." *Id.* at 46,277.

[11]    Because the GFLA regulates real estate loans, the OCC applied 12 C.F.R. § 34.4 -- which governs the applicability of state law to real estate loans by national banks -- rather than 7 C.F.R. § 7.4008 -- which governs non-real estate loans, and is the provision relevant to this case. This distinction is not material, however, as the relevant provisions of both regulations are the same. *Compare* 12 C.F.R. §§ 34.4(a)(4), (a)(9), (b)(5) *with* § 7.4008(d)(4), (d)(8), (e)(4).

**\*8** Having concluded that Wis. Stat. §§ 425.104 and 425.105 are inapplicable to national banks by reason of federal preemption, the court finds that a debt collector assigned a debt from a national bank is likewise exempt from those requirements. As noted above, an assignee "steps into the shoes of the assignor ... whatever the shoe size." *Olvera*, 431 F.3d at 288. Of course, the court hastens to add that debt collectors, such as Portfolio and its legal counsel, are still expected to comply with all provisions of the WCA with respect to their own actions, a position consistent with that of the Wisconsin DFI. *DFI Letter* (Aug. 31, 2018). Additionally, the court does express some hesitation about the impact of this ruling in a larger context, especially given the lack of definitive case law, and so again emphasizes that this ruling is limited to the narrow circumstances in which this claim is brought.

For all these reasons, the defendants in this case were *not* required to send Lako a right to cure letter under Wis. Stat. §§ 425.104 and 425.105 as a precondition to accelerating his debt or filing suit against him, and so, they did not misrepresent their ability to do so. Although this conclusion only disposes of one of plaintiff's three claims, the parties represent in a joint stipulation that "an interlocutory appeal of the right-to-cure issue by the losing party would be appropriate" under 28 U.S.C. § 1292(b). (Dkt. #11.) Specifically, § 1292(b) authorizes a court to certify an order for an interlocutory appeal if the order (1) involves a controlling question of law, (2) as to which there is a substantial ground for a difference of opinion, and (3) that an immediate appeal may materially advance the ultimate determination of the litigation. Such interlocutory review is permitted "to assure orderly and efficient administration of complex cases." *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1263 (7th Cir. 1980). Given the closeness of the question as to plaintiff's alleged standing in light of recent caselaw, the importance and novelty of the preemption issue presented, and the likelihood that resolution of either issue will effectively be dispositive of the remaining two issues in suit, the court will certify both the standing and preemption questions to the Seventh Circuit Court of Appeals.

ORDER

IT IS ORDERED that:

1) Defendants' motion for partial summary judgment (dkt. #12) is GRANTED.

2) The standing and preemption questions resolved in this opinion and order are certified for interlocutory appeal to the United States Circuit Court for the Seventh Circuit.

**All Citations**

Slip Copy, 2021 WL 3403632

---

End of Document                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.